Howard A. Belodoff ISB 2290
Belodoff Law Office, PLLC
1004 W. Fort Street
Boise, ID  83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
hbelodoff@hotmail.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| LANCE GORDON OCAMPO, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT AND DEMAND FOR** |
| | ) | **JURY TRIAL** |
| CORIZON, L.L.C., a Missouri Corporation, | ) | |
| Dianna Collins, Amy Anderson, Warden | ) | |
| North Idaho Correctional Institution, Brian | ) | |
| Crowl, Lieutenant North Idaho Correctional | ) | |
| Institution and JOHN/JANE DOES 1-10, | ) | |
| identities are unknown at this time, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COME NOW Plaintiff, LANCE GORDON OCAMPO, by and through his attorney,

Howard A. Belodoff, of Belodoff Law Office, P.L.L.C., for a cause of action against the

Defendants states and alleges as follows:

**I.  GENERAL ALLEGATIONS**

1.      This is an action brought by Plaintiff, Lance Gordon Ocampo, who previously

was incarcerated at the North Idaho Correctional Institute in Cottonwood, Idaho ("NICI").

2.      On or about March 1, 2016, Plaintiff was sentenced to the custody of the Idaho

Department of Correction under the Retained Jurisdiction program.

COMPLAINT – Page 1

3.      Plaintiff remained under the retained jurisdiction of the Idaho State District Court subject to the prospect of being placed on probation for the remaining time of his sentence.

4.      On or about December 13, 2017, Plaintiff was release from the custody of the Idaho Department of Corrections and is no longer incarcerated.

5.      Plaintiff seeks monetary damages from Defendants for delaying and failing to provide him with the necessary medical care to address a serious medical condition thereby causing him to suffer the unnecessary infliction of pain and permanent injuries.

6.      Defendant Corizon L.L.C., its unknown employees, contractors and/or agents and Defendant Collins, Defendant Anderson, Warden at the NICI, Defendant Crowl, Lieutenant at the NICI, and other unknown employees, contractors and/or agents of the Idaho Department of Correction, hereinafter Defendants, by their actions, customs, practices and policies, under color of state law, were deliberately indifferent to Plaintiff's medical condition and severe pain in violation of the Eighth Amendment to the United States Constitution.

7.      Defendant Corizon L.L.C., Defendant Collins, and other unknown employees, contractors and/or agents of Corizon L.L.C., by their actions, customs, practices and policies, delayed and failed to provide Plaintiff with necessary medical treatment for a serious medical condition and acted in a negligent, grossly negligent, intentional, and reckless manner.

8.      Defendant Anderson, Warden at the NICI, Defendant Crowl, Lieutenant at the NICI, and other unknown Defendant employees, contractors and/or agents of the Idaho Department of Correction, during the course and within the scope of their employment, delayed and failed to provide Plaintiff with necessary medical treatment for a serious medical condition and  acted in an intentional, reckless and grossly negligent manner in violation of Idaho state law.

## II. JURISDICTION AND VENUE

9.      This Court has jurisdiction under 28 U.S.C. § 1331(3) and (4) for violations of federal law and 28 U.S.C. § 1343 for violations of the constitutionally and federally protected civil rights of the Plaintiff under color of state law.

10.     This Court also has jurisdiction over the state law claims asserted herein pursuant to its Supplemental Jurisdiction powers authorized by 28 U.S.C. § 1367.

11.     Defendants are subject to personal jurisdiction of the Court because this case arises from Defendants' wrongful conduct in Idaho.

12.     This action is properly brought in this District under 28 U.S.C. § 1391(b) because all of the Defendants reside in this District and Plaintiff's claims arose in this District.

13.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. PARTIES

14.     Plaintiff is an individual who at all relevant times resided in Idaho and currently resides in Boise, Idaho.

15.     Defendant Corizon LLC ("Corizon") is a Missouri corporation that is qualified to do business, and which does business in the state of Idaho and committed, within the state of Idaho, the acts that are subject of this action.

16.     Defendant Dianna Collins was employed at NICI and was licensed as a nurse practitioner during the relevant times alleged herein.

17.     Defendant Amy Anderson was the Warden of the NICI during the relevant times alleged herein.

18.     Brian Crowl was a Lieutenant at the NICI during the relevant times alleged herein.

19.     John/Jane Does 1 to 10 are unknown individuals employed by or under contract with the Idaho Department of Corrections and Defendant Corizon who engaged in the acts or omissions which are the subject of this action.

## IV. PLAINTIFF'S FACTUAL ALLEGATIONS

20.     On or about March 1, 2016, Plaintiff was sentenced under the Retained Jurisdiction program to the custody of the Idaho Department of Corrections.

21.     On March 17, 2016 Plaintiff arrived at the NICI.

22.     The Retained Jurisdiction program provides a sentencing alternative for courts to target offenders who might, after a period of programming and evaluation, be viable candidates for probation rather than incarceration.

23.     Plaintiff was placed in classes and a substance abuse program and worked in the school's multi-media office.

24.     Plaintiff began to experience pain in a wisdom tooth so he went to the dentist employed at the NICI and had the tooth extracted.

25.     On the morning of April 28, 2016 Plaintiff was told to report to the medical office at NICI.

26.     A dentist employed by IDOC's medical provider, Corizon, took an x-ray of his tooth and performed a surgery to extract his wisdom tooth.

27.     Plaintiff did not receive any pain medication or antibiotics following the surgery.

28.     The next day, Plaintiff began to experience pain and swelling in his jaw and around the extraction site.

29.     Plaintiff fully complied with the post-operative instructions he was given by the dentist.

30.     On April 29, 2016, Plaintiff filled out a form requesting medical treatment with the Nature of Complaint/Problem" indicating he thought he had an infection and had been experiencing pain.

31.     Plaintiff went to sick call and was seen by staff. He was examined but only received some ibuprofen.

32.     On May 1, 2016, Plaintiff filled out a form requesting medical treatment with the "Nature of Complaint/Problem" indicating "My tooth hurts. My mouth hurts. Can't sleep, can't eat, can't swallow, can't open mouth. PAIN!"

33.     Plaintiff went to the medical office to request medication for the pain and to be seen by a doctor or taken to hospital.

34.     The staff person refused to provide Plaintiff with pain medication and refused Plaintiff's request to be transported to the hospital.

35.     The staff person determined that the swelling in Plaintiff's throat was strep without performing a strep test because some other inmates had strep.

36.     Plaintiff was given penicillin for the strep throat.

37.     On May 2, 2016 Plaintiff submitted another form requesting medical treatment with the "Nature of Complaint/Problem" indicating "PAIN! PAIN! PAIN! More Swelling No Sleep No food. Please help me!!!!"

38.     Plaintiff was seen by a medical staff person but was only provided over-the-counter ibuprofen and was charged $6.00.

39.     Plaintiff experienced increasing and worsening pain and swelling.

40.     Plaintiff was never examined by a qualified medical professional who could diagnose his medical condition and prescribe treatment to alleviate the pain and swelling caused by the fast growing infection in his jaw, neck and face.

41.      Plaintiff had difficulty opening his jaw and his face became distorted from the swelling.

42.     Plaintiff was only provided with over-the-counter ibuprofen tablets that did not relieve the pain or reduce the swelling.

43.     Plaintiff was never seen by a doctor or a dentist nor prescribed pain medication or antibiotics at the NICI to relieve the extreme pain and swelling in his jaw and face.

44.     Plaintiff was specifically told by medical staff that his requests for pain medication and to be examined by a doctor were out of the question.

45.     Plaintiff continually informed medical staff that the pain and swelling were getting worse.

46.     Plaintiff was told that there was nothing the medical staff could do or to "cowboy up" to deal with the pain and swelling.

47.     Upon information and belief, medical staff contacted the dentist but Plaintiff was not reexamined to determine the cause of the pain and swelling or address his medical condition.

48.     The worsening swelling caused obvious deformities on the right side of his face and was affecting his right eye socket which could be observed by medical staff.

49.     The swelling started to affect the Plaintiff's left side of his face under his chin.

50.     Plaintiff's jaw was so swollen he could barely speak audible words.

51.     The pain was so unbearable that Plaintiff could not function, sleep nor eat.

52.     Plaintiff went to a correctional officer to try to get some medical attention.

53.     While Plaintiff was present, the correctional officer called Lieutenant Brian Crowl to inform him of Plaintiff's medical condition and need for medical attention.

54.     Lieutenant Crowl requested that the correctional officer ask Plaintiff if he would have gone to the hospital if he was not incarcerated in prison.

55.     Plaintiff told the correctional officer, who then told Lieutenant Crowl, that Plaintiff would have gone after the second day when he started experiencing the severe pain and swelling.

56.     Lieutenant Crowl, without consulting any medical staff or viewing Plaintiff severely swollen face, failed or refused to ensure that Plaintiff received any medical treatment for his pain and swelling and refused Plaintiff's request to be seen by a doctor or to be taken to a hospital for medical treatment.

57.     Plaintiff was subsequently informed that he would be seen by the "practitioner" who worked in the medical office at NICI.

58.      On May 3, 2016, when Plaintiff went to the morning sick call but was turned away and told to return to his bunk until called back.

59.     Plaintiff was not called back so he went back to the medical office and was told the "practitioner" was in a meeting.

60.     Plaintiff was instructed to go back to his bunk until he was called back to see the "practitioner."

61.     Plaintiff waited for four hours but was not called back to see the "practitioner."

62.     Plaintiff again went back to sick call and was told the "practitioner" had left for the day and he would not receive any treatment for his pain and swelling because the

"practitioner" was the only person who could authorize treatment of Plaintiff's pain and swelling.

63.     Upon information and belief, the "practitioner" who refused to examine and authorize medical treatment of Plaintiff was Diana Collins, a Nurse Practitioner employed by Corizon.

64.     Upon information and belief, Amanda Bagley, a medical staff person, who could see Plaintiff was in severe distress and needed immediate medical attention, telephoned the "practitioner" who told her to take some photos of Plaintiff's face and text them to her.

65.     Ms. Bagley took and sent the photographs to the "practitioner."

66.     After about a half hour, Plaintiff was told that he would be taken to the Saint Mary's Hospital in Cottonwood, Idaho.

67.     Plaintiff was transported to the Saint Mary's Hospital by a correctional officer where he was examined for the first time by a doctor who ordered a CT scan.

68.     The CT scan revealed a large abscess that was approximately 10 x 3 x 5 cm that went from the right side of his neck, extending down to the masticator space, deep into the zygomatic arch, down to the floor of the mouth and below the submandibular gland.

69.     The doctor subsequently informed Plaintiff that he was going to have to be immediately taken to the hospital in Lewiston for emergency surgery due to the serious and dangerous nature of Plaintiff's medical condition.

70.     Plaintiff was transported by ambulance to St. Joseph's Hospital in Lewiston, Idaho.

71.     Plaintiff was examined in the emergency room by a physician who requested that a surgeon examine the Plaintiff.

72.    The surgeon, after examining Plaintiff, noted a significate odontogenic infection which extended from the base of the skull and temple region and inferiorly down to the level of the submandibular space.

73.    Clinically the infection extended anteriorly into the floor of mouth to the right side of his face.

74.    Plaintiff was intubated and anesthetized in preparation for immediate surgery.

75.    Due to the significate amount of edema, a tooth had to be extradited to obtain access to the right lateral pharyngeal and masticator regions.

76.    Neck incisions had to be performed so drains were inserted.

77.    Plaintiff remained unconscious for approximately two days following the surgery.

78.    Plaintiff remained in the Intensive Care Unit for several days before he was moved to a regular hospital room.

79.    Plaintiff was guarded by a correctional officer and confined to his bed most of the time.

80.    Plaintiff was not allowed to contact anyone about his medical condition and surgery, including his family, and was not permitted any visitors while hospitalized.

81.    Plaintiff suffered a high degree of pain and swelling following his surgery and during his hospitalization.

82.    Plaintiff had to receive medications to relieve his pain from the surgery and to cure and fight off further infection.

83.    Plaintiff was unable to eat solid foods while hospitalized and was fed liquids intravenously.

84.    As a result, he lost a substantial amount of weight.

85.     Plaintiff was unable to fully open his mouth following the surgery. This made it difficult for him to eat and speak.

86.     Plaintiff was left with two permanent visible scars on his neck as a result of the surgery.

87.     Plaintiff was discharged from the hospital on May 9, 2017.

88.     Plaintiff was then driven to the Idaho State Correctional Institution ("ISCI") in Boise, Idaho and confined in the infirmary.

89.     Plaintiff continued to experience pain and swelling and had difficulty eating because his mouth would not open and his face and tongue were numb.

90.     Plaintiff was not taken to an oral surgeon so the drains could be properly removed.

91.     One of the drains fell out on its own.

92.     A nurse attempted to remove the other drain causing Plaintiff severe pain.

93.     Another medical staff member had to take over the procedure to remove the drains causing further pain.

94.     At that time, Plaintiff was given a shot to numb the area and the drain was removed.

95.     Plaintiff was eventually moved out of the infirmary but continued to suffer from pain and numbness in his jaw and tongue.

96.     The hole in his neck where the drain was removed continued to drain fluids.

97.     Plaintiff was not taken for any additional surgeries and physical therapy and his ongoing medical needs were not addressed by Corizon medical staff at ISCI.

98.     Plaintiff completed and submitted numerous grievances of the failure to address his ongoing medical condition and lack of treatment.

99.     Plaintiff continues to suffer pain, swelling and numbness on his face and in his mouth.

100.    Plaintiff continues to have problems with his throat and cannot fully open his mouth.

101.    Plaintiff has permanent and visible scars on his neck.

102.    Plaintiff was unable to timely complete the Retained Jurisdiction program at NICI after he was transported to the ISCI.

103.    Plaintiff was required to start a new Retained Jurisdiction program at ISCI.

104.    The transfer to ISCI and the loss of credit for the Retained Jurisdiction program classes he took at NICI delayed his subsequent release on probation.

105.    Plaintiff was incarcerated for a longer period of time than if he would have completed his Retained Jurisdiction at NICI.

106.    Plaintiff was interviewed by Joe Caradona at the ISCI.

107.    Plaintiff was told that Mr. Caradona was an investigator for Corizon who was assigned to investigate why Plaintiff's medical treatment was delayed and not provided at NICI and his ongoing efforts to request medical treatment during his incarceration.

108.    On or about September 6, 2016, Plaintiff was taken to a Sergeant's office and spoke by telephone with Warden Anderson about what he told Mr. Caradona and the delay and failure to provide him medical treatment at NICI.

109.     Plaintiff was not informed of the results of this investigation or what measures, policies and procedures, if any, were not followed or needed to be implemented to prevent a reoccurrence of the delays and denial of medical care to similarly situated inmates at the NICI.

110.     Plaintiff was not informed as whether any employees at the NICI or medical staff employed by Corizon received any disciplinary action for the delay and denial of his receiving necessary medical treatment or whether employees received additional training to ensure that inmates receive necessary medical care.

111.     Plaintiff was forced to endure severe and debilitating pain, an invasive surgery, and has suffered permanent injuries due to the deliberate and willful failure to provide him with timely and necessary medical evaluation, care and treatment of a serious medical condition.

112.     Defendants were responsible for providing medical care and treatment to Plaintiff during the period of time he was incarcerated at NICI and ISCI.

113.     Defendants exhibited deliberative indifference to Plaintiff's medical condition and health care needs by purposefully, intentionally and recklessly delaying and failing to provide or respond to requests for necessary treatment and rehabilitation to alleviate Plaintiff's pain and suffering and ongoing injury.

114.     Defendants purposefully, intentionally and recklessly have a history, custom, policy, and practice of denying, delaying, ignoring, and improperly responding to inmate medical requests and not taking proper and timely actions to prevent needless pain and injuries cause by a serious medical condition.

115.     Defendants did not properly supervise the medical staff and treatment that was requested and not provided to Plaintiff and thereby encouraged, condoned and ratified the denial

of necessary medical treatment of serious medical conditions and the infliction of needless pain and injuries upon Plaintiff.

116.    Plaintiff was forced to experience pain and suffered emotional distress, mental anguish, physical disability, disfigurement and permanent impairments due to Defendants' failure to timely respond, examine, and treat Plaintiff's serious, medical condition and the failure to reasonably and promptly transfer Plaintiff to a hospital.

117.    Plaintiff has incurred and may have to incur additional medical expenses and loss of income caused by Defendants.

118.    Plaintiff has timely served a Notice of Tort claim of the allegations in this Complaint with the Idaho Secretary of State. More than ninety day has passed since the filing of the Notice.

119.    As a result of Defendants' unlawful and unconstitutional acts, under color of state law, Plaintiff has suffered monetary damages in amounts to be determined at trial.

120.    Plaintiff is entitled to recovery of monetary damages, prejudgment interest, attorneys' fees, and costs.

## FIRST CLAIM FOR RELIEF

### Eighth Amendment

121.    Plaintiff alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully alleged herein.

122.    Defendants, under color of state law, while Plaintiff was under their care and custody, deprived Plaintiff of certain rights, privileges, and/or immunities which are secured by the Eighth Amendment United States Constitution including protection against the unnecessary infliction of cruel and unusual punishment due the purposeful delay and failure to respond to

Plaintiff's request to be examined by qualified medical staff to determine the cause of his pain and swelling and who could authorized treatment and the purposeful denial of treatment of his medical needs in order to prevent the need for surgery and his severe and permanent injuries.

123.    The delay and failure to respond to Plaintiff's pain and requests for medical treatment directly and proximately resulted in Plaintiff's surgery, hospitalization, the prolonging of his incarceration, and the delay in being released on probation.

124.    The deliberate indifference to Plaintiff's serious medical needs caused Plaintiff to suffer unnecessary and continuing pain and permanent injuries and violated his right to be free from the infliction of cruel and unusual punishment.

125.    Plaintiff has suffered damages as a direct and proximate result of Defendants' violation of the Plaintiff constitutional rights.

## SECOND CLAIM FOR RELIEF

### Negligent, Reckless, Willful, and Wanton Conduct, Training and Supervision

126.    Plaintiff alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully alleged herein.

127.    These causes of action are asserted against Corizon, its unknown employees, agents and contractors and Defendant Collins.

128.    Corizon had a duty to select and retain competent employees, contractors and/or agents who were assigned to treat and deliver medical services to Plaintiff.

129.    Corizon had a duty to properly and reasonably train, monitor, and supervise its employees, contractors and/or agents who were assigned to treat and deliver medical services to Plaintiff.

130.    Corizon had a duty to formulate, adopt and enforce necessary policies, procedures and protocols with respect to the appropriate response or conduct for the use of its employees, contractors and/or agents who were assigned to treat and deliver medical services to Plaintiff.

131.    Corizon failed to properly supervise and/or train its employees and/or agents relative to their examination, treatment, reporting, and medical oversight of Plaintiff.

132.    Corizon's failure to properly supervise and/or train its employees, contractors and/or agents was/were the proximate cause(s) of damages to Plaintiff.

133.    Corizon Defendants breached the duty of care owed to Plaintiff to act in all respects within the applicable, local standards of health care practice.

134.    The specific breaches of the local standards of care applicable to this case include, but are not limited to, the following:

a.   Failing to properly evaluate, examine, diagnose, and treat Plaintiff's pain and infection after a tooth extraction;

b.   Failing to properly and timely transport Plaintiff to receive medical care.

c.   Failing to provide necessary treatment and care after Plaintiff's surgery to prevent further and permanent injuries.

135.    As a direct and proximate result of the acts and omissions of Corizon Defendants, as well as their negligent, reckless, willful, wanton, and/or otherwise tortious conduct, Plaintiff has incurred medical bills and other economic special damages in amounts to be proven at trial.

136.    As a direct and proximate result of the acts and omissions of Corizon and Defendant Collins, as well as their negligent, reckless, willful, wanton, and/or otherwise tortious conduct, Plaintiff has suffered noneconomic damages for pain and suffering, emotional distress,

permanent injuries, the loss of enjoyment and the ability to perform daily activities in amounts to be proved at trial.

## THIRD CLAIM FOR RELIEF

### Grossly Negligent, Reckless, Wilful and Wandon Conduct

137.    Plaintiff alleges and incorporates by reference the preceding paragraphs of this Complaint as fully alleged herein.

138.    Defendant Anderson, Defendant Crowl, and the unknown individual Defendants are employed by the Idaho Department of Corrections.

139.     Defendant Anderson, Defendant Crowl, and the unknown individual Defendants, in the course and scope of their employment, engaged in the acts or omissions, as alleged herein, which caused the infliction of unnecessary pain and injuries on Plaintiff by denying and delaying the provision of necessary medical treatment.

140.    Defendant Anderson, Defendant Crowl, and the unknown individual Defendants intentionally and knowingly delayed and failed to act or acted in a manner to create an unreasonable risk of harm to Plaintiff or involved a high degree of probability that such harm would result.

141.    Defendant Anderson, Defendant Crowl, and the unknown individual Defendants had a duty to properly and reasonably train and supervise their employees, contractors and/or agents who delayed and failed to treat and deliver medical services to Plaintiff.

142.    As a direct and proximate result of the acts and omissions of Defendant Anderson, Defendant Crowl, and the unknown individual Defendants, as well as their grossly negligent, reckless, willful, wanton, and/or otherwise tortious conduct, Plaintiff has incurred medical bills and other economic special damages in amounts to be proven at trial.

COMPLAINT – Page 16

143.     As a direct and proximate result of the acts and omissions of Defendant Anderson, Defendant Crowl, and the unknown individual Defendants, as well as their grossly negligent, reckless, willful, wanton, and/or otherwise tortious conduct, Plaintiff has suffered noneconomic damages for pain and suffering, emotional distress, permanent injuries, the loss of enjoyment and the ability to perform daily activities in amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of a Judgment against Defendants that:

1.  Declares that Defendants have violated the Eighth Amendment to the United States Constitution;

2.  Declares that Defendants have violated the applicable State law;

3.  Awards Plaintiff special and general compensatory damages in an amount proved at trial;

4.  Awards Plaintiff punitive damages in an amount proved at trial;

5.  Awards Plaintiff prejudgment interest, reasonable attorneys' fees and costs;

6.  Awards such other and further relief as this Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Respectfully submitted this 30th day of January, 2018.

/s/_____
Howard A. Belodoff, ISB No. 2290
BELODOFF LAW OFFICE PLLC
1004 West Fort Street
Boise, ID 83702
Telephone: (208) 331-3378
Facsimile: (208) 947-0014
Email: hbelodoff@hotmail.com