LAWRENCE G. WASDEN
ATTORNEY GENERAL

Craig D. Stacey (ISBN 7996)
Special Deputy Attorney General
craig@melawfirm.net
MOORE ELIA KRAFT & HALL, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone:   (208) 336-6900
Facsimile: (208) 336-7031

*Attorneys for Defendants Amy Anderson, Deputy Warden Idaho Correctional Institution-Orofino and Brian Crowl, Lieutenant North Idaho Correctional Institution*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE GORDON OCAMPO,<br><br>            Plaintiff,<br><br>vs.<br><br>CORIZON, L.L.C., a Missouri Corporation, Dianna Collins, Amy Anderson, Warden North Idaho Correctional Institution, Brian Crowl, Lieutenant North Idaho Correctional Institution and JOHN/JANE DOES 1-10, identities are unknown at this time,<br><br>            Defendants. | Case No. 1:18-cv-47-EJL<br><br>**DEFENDANTS AMY ANDERSON AND BRIAN CROWL'S MEMORANDUM IN SUPPORT OF INITIAL MOTION FOR SUMMARY JUDGMENT** |

COME NOW Defendants Amy Anderson and Brian Crowl, by and through their counsel of record, Moore Elia Kraft & Hall, LLP, and pursuant to Dist. Idaho Loc. Civ. R. 7.1(b)(1), hereby provides this memorandum of points and authorities in support of these Defendants' Initial Motion for Summary Judgment.

**DEFENDANTS AMY ANDERSON AND BRIAN CROWL'S MEMORANDUM IN SUPPORT OF INITIAL MOTION FOR SUMMARY JUDGMENT- 1**

# INTRODUCTION

Lance Gordon Ocampo, former inmate #118466 of Idaho Department of Corrections was housed at North Idaho Correctional Institution (NICI) beginning on March 14, 2016. On April 24, 2016, Mr. Ocampo put in a medical request to have a wisdom tooth pulled and contracted an infection in the area after the tooth was removed. He claims that while he had this infection at NICI, he was initially denied medical care and that the medical care he eventually received was delayed by the defendants in this lawsuit.

Mr. Ocampo began experiencing pain in the extraction area the evening of April 29, 2016, the day after his tooth was removed. *Statement of Material Facts, ¶ 3*. He was seen in the nurse's clinic the next day and received ibuprofen for the pain. His pain continued and he put in another Health Service Request form indicating he was in pain and that his condition was worsening. There had been an outbreak of strep throat at the facility and due to the swelling in Mr. Ocampo's throat, it was believed that he had contracted strep throat. *Complaint, ¶ 38*. He was seen in the nurses' clinic the next morning and received 500 mg. of penicillin. *Statement of Material Facts, ¶ 6*.

The pain in Mr. Ocampo's throat and mouth continued and on May 3, he was taken to St. Mary's Hospital in Cottonwood, Idaho, and then transported to St. Joe's Hospital in Lewiston, Idaho that same day. He was diagnosed with an abscess of his lateral pharyngeal space. Mr. Ocampo was operated on and then stayed at the hospital for several days. He was transported to Idaho State Correctional Institution (ISCI) on May 10, 2016. Mr. Ocampo was released from custody on December 13, 2016.

Mr. Ocampo filed a Complaint in this lawsuit on January 30, 2018. He alleges that Defendants Deputy Warden Amy Anderson and Lieutenant Crowl delayed and failed to provide

him with necessary medical treatment and acted in an intentional and grossly negligent manner while he was housed at NICI. *Complaint, ¶8*. Specifically, Mr. Ocampo alleges that on approximately May 2, 2016, he went to an unnamed correctional officer to try and get medical attention. *Id., ¶ 52*. He alleges that while he was present the officer called Lt. Crowl to inform him of Plaintiff's condition and need for medical attention. *Id., ¶ 53*. Mr. Ocampo further alleges that Lt. Crowl refused Plaintiff's request to be seen by a doctor or to be taken to a hospital for medical treatment, despite the fact that medical care is provided by an independent third party medical provider, not IDOC or its employees . *Id., ¶ 56*.

In regard to Deputy Warden Anderson, Mr. Ocampo alleges that on September 6, 2016, he spoke by telephone to DW Anderson regarding a conversation he had with an individual that investigated the medical care provided to him at NICI. *Complaint, ¶ 108*. Mr. Ocampo alleges that he was never informed of the results of this investigation or whether any employees at the NICI or medical staff employed by Corizon received any disciplinary action for the delay and denial of his medical treatment. *Id*. Mr. Ocampo does not allege any connection between his conversation with Deputy Warden Anderson and the alleged lack of medical care provided at NICI.

Mr. Ocampo did not file a Grievance on the lack of medical care at NICI until August 24, 2016, more than three and one half months after this incident. Further, Mr. Ocampo never named Deputy Warden Anderson or Lt. Crowl in any Grievance.

## **LEGAL STANDARDS**

Summary judgment is the proper procedural vehicle to raise the affirmative defense of exhaustion of administrative remedies. See, e.g., *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) and *Daniel v. Blades*, 2017 WL874567, *1 (D. Idaho 2017, C.J. Winmill). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not a "disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Material facts are those which may affect the outcome of the case. *See Id.* at 248.

The Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988). In addition, the Court "must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Anderson*, 477 U.S. at 256-57. The non-moving party must go beyond the pleadings and show by "affidavits, or by the 'depositions, answers to interrogatories, or admissions on file'" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324. The non-moving party must

produce at least some "significant probative evidence tending to support the complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). A mere scintilla of evidence, or evidence that is merely colorable or not significantly probative, is not sufficient to present a genuine issue as to a material fact. *United Steel Workers v. Phelps Dodge Corp.*, 865 F.2d 1539 (9th Cir. 1989). The Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

## ARGUMENT

**1. Exhaustion is a Mandatory Pre-Condition to Suit.**

A plaintiff's failure to exhaust his administrative remedies forecloses both federal and state cause of actions. *Carr v. Carlyn*, 2017 WL 1042064, at 2 (D. Idaho Mar. 17, 2017). The federal Prison Litigation Reform Act (PLRA) requires pre-complaint exhaustion of administrative remedies for all federal claims brought by state prisoners who challenge the conditions of their confinement:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*42 U.S.C. § 1997e(a)*.

There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court. *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Under the PLRA, <u>proper</u> exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (emphasis added). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

**2. Mr. Ocampo Was Required to Follow the IDOC Grievance Process.**

The purpose of the Grievance Procedure for Offenders is to provide offenders a process to "voice complaints about policies…conditions of confinement… employee actions…medical, and other incidents occurring within the jurisdiction of the Department." *Declaration of Dana Maybon* (hereinafter "*Maybon Dec*."), *Exhibit A*. The procedure is the vehicle for offenders to "voice concerns" and helps "IDOC staff increase adherence to policy and procedure, and aids in the discovery of unworkable, impractical, or inconsistent practices." *Id*.

The IDOC grievance procedure consists of a three-step process. *Maybon Dec*., ¶ 5. That process requires the offender to: (1) seek an informal resolution of the matter by completing an Offender Concern Form sent to the Correctional Officer most capable of responding to and resolving the issue; (2) if informal resolution cannot be accomplished, complete a Grievance Form containing specific information including the nature of the complaint, date, place, and names of the specific issue being grieved (the offender must suggest a solution to the issue and can only raise one specific issue per grievance); and (3) file an appeal of the response to the grievance. *Maybon Dec*., ¶¶ 5-8. The Grievance Form is required to be filed within thirty (30) days of the incident or problem that is the basis for the grievance. *Id.,* ¶ 7. If the offender is not satisfied with the

response to his grievance, he may, within five (5) days of receiving the response, file an appeal. *Id., ¶ 9*.

The offender grievance process is exhausted only upon completion of all three steps, i.e., (1) Offender Concern Form, (2) Grievance Form, and (3) Grievance Appeal. *Maybon Dec.*, *¶ 11*. An offender who does not file a Grievance Form, files a grievance outside the time limit, or fails to appeal the response to such grievance, did not complete the IDOC grievance process and thus has not exhausted his or her administrative remedies. *Id.* When a Grievance Form is incorrectly filled out, it is sent back to the Offender with instructions as to correcting the issue and filed as Returned Without Action ("RWA"). *Maybon Dec.*, *¶ 15*.

### 3. Mr. Ocampo Failed to Properly Exhaust his Administrative Remedies.

Pertinent to this lawsuit, Offender Ocampo alleges that after he had his tooth removed while he was incarcerated at NICI, he was in pain and "continually informed medical staff that the pain and swelling were getting worse." *Dkt. No. 1, ¶ 45*. He filed several Health Service Requests forms and was seen in the nurse's clinic. *Id., ¶ 28-47*. He then went to a correctional officer who allegedly called Lt. Crowl because Lt. Crowl was apparently not at the facility at the time. *Id., ¶ 53*. Mr. Ocampo alleges that after Lt. Crowl was informed of Mr. Ocampo's medical condition, Lt. Crowl "failed or refused to ensure that Plaintiff received any medical treatment for his pain and swelling and refused Plaintiff's request to be seen by a doctor or to be taken to a hospital for medical treatment." *Id., ¶ 56*. However, Mr. Ocampo was subsequently informed that he would be seen by the practitioner who worked in the medical office at NICI. *Id., ¶ 57*. Mr. Ocampo was later taken to the hospital and then to ISCI, where he spent the rest of his incarceration.

On August 24, 2016, more than three and one half months later, Mr. Ocampo filed a Grievance form regarding improper care after his wisdom tooth was removed while at NICI.

*Maybon Dec., Exhibit C, pp. OCAMPO_07-08*. This Grievance was denied as untimely. *Id*. Lt. Crowl was not named in this Grievance, nor was he named in any other Grievance filed by Mr. Ocampo.

Mr. Ocampo further alleges that "on or about September 6, 2016, Plaintiff was taken to a Sergeant's office [at ISCI] and spoke by telephone with Warden Anderson about what he told [an investigator] about the delay and failure to provide him medical treatment at NICI." *Dkt. No. 1, ¶ 108*. This is the only factual allegation or statement regarding Deputy Warden Anderson in Mr. Ocampo's Complaint. Mr. Ocampo never filed any Grievance form which mentions this issue or Deputy Warden Anderson by name. *See Maybon Dec., Exhibit C*.

By failing to timely file a Grievance on these alleged incidents, Plaintiff Mr. Ocampo failed to exhaust his administrative remedies against these Defendants and his claims should be dismissed.

## CONCLUSION

Offender Ocampo failed to properly exhaust his administrative remedies against these Defendants because the Grievance Forms he filed were both untimely and did not claim any action or inactions by these Defendants. For the foregoing reasons, Defendants respectfully request that this Court grant their motion for summary judgment and dismiss Plaintiff's claims against them with prejudice.

DATED this 10th day of July, 2018.

                                      MOORE ELIA KRAFT & HALL, LLP

                                      By:/s/ Craig D. Stacey_____
                                          Craig D. Stacey, of the firm
                                          *Attorneys for Defendants Amy Anderson*
                                          *and Brian Crowl*

**DEFENDANTS AMY ANDERSON AND BRIAN CROWL'S MEMORANDUM IN SUPPORT OF INITIAL MOTION FOR SUMMARY JUDGMENT- 8**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of July, 2018, I caused to be served a true and correct copy of the foregoing document, by the method indicated below, and addressed to the following:

| | |
|---|---|
| Howard A. Belodoff<br>Belodoff Law Office, PLLC<br>1004 W. Fort Street<br>Boise, ID 83702<br>*Attorneys for Plaintiff* | __x__ ECF service |
| J. Kevin West<br>Dylan A. Eaton<br>Parsons, Behle & Latimer<br>800 W. Main Street, Suite 1300<br>Boise, Idaho 83702<br>*Attorneys for Defendant Corizon, LLC* | __x__ ECF service |

/s/ Craig D. Stacey_____
Craig D. Stacey