UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE GORDAN OCAMPO,<br><br>     Plaintiff,<br><br>     v.<br><br>CORIZON, LLC, a Missouri Corporation; DIANNA COLLINS; AMY ANDERSON, Warden North Idaho Correctional Institution, BRIAN CROWL, Lieutenant North Idaho Correctional Institution, JIM DUNNING, KEITH BOLINE; PATTI SCHMITT; and JOHN/JANE DOES 1-10,<br><br>     Defendants. | Case No. 1:18-cv-00047-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are numerous motions filed by the parties in this case. Defendants Amy Anderson and Brian Crowl ("Anderson and Crowl") filed an initial Motion for Summary Judgment (Dkt. 40), a Motion to Amend/Correct Scheduling Deadlines (Dkt. 55), and a Motion to Amend Answer (Dkt. 56). Defendants Dunning (Dkt. 57) and Bolin, Collins, Schmitt, and Corizon LLC (Dkt. 58) join in Anderson and Crowl's Motion to Amend/Correct Scheduling Deadlines (Dkt. 55).

Plaintiff Lance Ocampo filed a Motion to Strike Defendants' Motion for Summary Judgment (Dkt. 51), a Motion for Extension of Time (Dkt. 52), and a Motion to Waive or Set Bond (Dkt. 60).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to DENY Anderson and Crowl's Motion for Summary Judgment, GRANT in Part and DENY in PART Ocampo's Motion to Strike, and GRANT the remaining Motions.

## II. BACKGROUND

### A. Factual Background

Plaintiff Lance Gordon Ocampo is a former inmate of the Idaho Department of Corrections ("IDOC") who was housed at North Idaho Correctional Institution ("NICI") beginning on March 14, 2016. On April 24, 2016, Ocampo filed a medical request to have a wisdom tooth pulled. His tooth was subsequently pulled four days later.

On April 29, 2016—the day after his tooth was removed—Ocampo began experiencing pain in the extraction area. The following day, Ocampo went to the prison's nurse's clinic and received ibuprofen for the pain. Ocampo's pain, however, continued and he put in another Health Service Request form indicating he was in a lot of pain and that his condition was worsening. The following morning, Ocampo went again to the nurses' clinic and received 500 mg. of penicillin.

The pain in Ocampo's throat and mouth continued and on May 3, 2016, he was taken to St. Mary's Hospital in Cottonwood, Idaho, and then transported immediately to St. Joe's Hospital in Lewiston, Idaho. Ultimately, Ocampo was diagnosed with an

abscess of his lateral pharyngeal space and was operated on that same day. Ocampo stayed at the hospital for several days.

On May 10, 2016, Ocampo was transported to the Idaho State Correctional Institution ("ISCI") where he served the remaining six months of his sentence. Ocampo was released from custody on December 13, 2016.

Ocampo filed a Complaint in this lawsuit on January 30, 2018. Ocampo claims that when he experienced this tooth infection at NICI, he was initially denied medical care and that the medical care he eventually received was delayed by defendants.[1] Ocampo alleges that the defendants at issue in this motion for summary judgment failed to provide him with necessary medical treatment and acted in an intentional and grossly negligent manner while he was housed at NICI.

Specifically, Ocampo alleges that on approximately May 2, 2016, he went to an unnamed correctional officer to try and get medical attention. He alleges that while he was present, the officer called Lt. Brian Crowl to inform him of Plaintiff's condition and need for medical attention. Ocampo further alleges that Crowl refused Plaintiff's request to be seen by a doctor or to be taken to a hospital for medical treatment.

Ocampo also alleges that on September 6, 2016, he spoke by telephone to Deputy Warden Anderson regarding a conversation he had with an individual that investigated the medical care provided to him at NICI. Ocampo claims that he was never informed of

---

[1] While there are numerous Defendants in this lawsuit, the instant motion was filed on behalf of only two defendants—Amy Anderson and Brian Crowl—thus the Court will narrow the scope of the background to these individuals.

the results of this investigation or whether any employees at the NICI or medical staff

employed by Corizon received any disciplinary action for the delay and denial of his

medical treatment.

### B.  Procedural Background

On July 10, 2018, Anderson and Crowl filed an initial Motion for Summary

Judgment. Dkt. 40. In this Motion, they allege that Ocampo failed to exhaust his

administrative remedies prior to filing this lawsuit and, as a result, the suit is barred.

Ocampo responded to this Motion and noted that he was not an inmate when he filed the

instant lawsuit and under Ninth Circuit precedent he was not required to follow the

grievance process. In their reply, Anderson and Crowl acquiesced to these arguments, but

alleged that nevertheless, under Idaho law, Ocampo's failure to exhaust his remedies

barred his Idaho claims. In the same motion, Anderson and Crowl also pointed out that

Ocampo failed to comply with local rules and submit a separate statement of facts in

response to their motion.

Ocampo then filed his Motion to Strike (Dkt. 51) alleging that Anderson and

Crowl's argument regarding state law exhaustion in their reply brief was improper.

Alternatively, Ocampo asked for permission to file a sur-reply to Defendant's brief

specifically addressing this new argument in favor of summary judgment.

Simultaneously, Ocampo filed a Motion for Extension of Time (Dkt. 52) requesting that

the Court excuse his failure to timely file his statement of facts.

In response to the Motion to Strike, Anderson and Crowl filed a sur-sur reply. Dkt.

52. In this brief, Defendants acknowledge their argument was only brought up in their

reply brief and state that they do not oppose Ocampo's Motion to file a sur-reply or his motion for an extension of time to file his statement of facts.

Ocampo then filed another document—captioned as a response to Defendants sur-sur reply. Dkt. 54. Defendants did not reply.[2]

About one month later, Anderson and Crowl filed a Motion to Amend/Correct Deadlines (Dkt. 55) and a Motion to Amend/Correct Answer (Dkt. 56). In the Motion to Amend/Correct Deadlines, Anderson and Crowl outline an error in prior negotiations between Counsel—namely the omission of a new deadline for amendment of pleadings and joinder of parties—regarding an already stipulated to extension of other relevant deadlines. All other defendants joined in this motion arguing that the omission was an oversight and asking the Court to extend that deadline as it had the others.

Relatedly, Anderson and Crowl filed a Motion to Amend/Correct Answer (Dkt. 56) seeking to file an amended answer to Ocampo's Amended Complaint—assuming the Court set a new deadline. In their proposed Amended Answer, Anderson and Crowl add many additional facts and affirmative defense—specifically their twentieth affirmative defense that Ocampo failed to post a bond as required under Idaho Code section 6-610. Dkt. 56, at 15.

In response to Defendants' Motion to Amend/Correct Deadlines and Amend/Correct Answer Ocampo filed strong memorandums in opposition. At the same

---

[2] The Court is not implying Defendants should have—or even could have under the rules—replied at this point, but simply that they did not respond further.

time, however, Ocampo also filed a Motion to Waive Bond. Dkt. 60. Responses and replies to all motions followed.[3]

Finally, on December 4, 2018, these interrelated Motions became ripe for adjudication. The Court will take up each motion in turn—chronologically—addressing first the applicable legal standard and then any factual analysis.

## III. ANALYSIS

### A. Anderson and Crowl's Motion for Summary Judgment (Dkt. 40); Ocampo's Motion to Strike (Dkt. 51) and Motion for Extension of Time (Dkt. 52).

#### i. Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.*

---

[3] It is an unfortunate—but largely unavoidable—reality, that due to a large caseload, it takes the Court quite some time to get to each case. In this case, there were numerous motions filed that triggered action from the other party. Instead of waiting, however, for the Court to rule on the motions, the parties pressed forward—filing sur and sur-sur replies and motions for defenses not yet in the case. The Court is not necessarily chastising the parties because on the one hand, had they waited until the Court's ruling on the underlying motions, it might have taken even more time to then comply with whatever the Court decided; but on the other hand, the parties may have also done unnecessary work (at the expense of their clients) briefing issues before the Court even had a chance to rule on them.

To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### ii. Analysis

The Court begins by addressing Ocampo's Motion to Strike (Dkt. 51) and Motion for Extension of Time (Dkt. 52).

"It is well established in this circuit that '[t]he general rule is that appellants cannot raise a new issue for the first time in their reply briefs.'" *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9thCir. 1990)) (citations omitted); *see also Thompson v. C.I.R.*, 631 F.2d 642, 649 (9th Cir. 1980), cert. denied, 452 U.S. 961 (1981). The Court has discretion to strike new material or may give the non-moving party an opportunity to respond. *Tovar v. U.S. Postal Service*, 3 F.3d 1271, 1273 at n. 3 (9th Cir. 1993); *see also St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, No. 1:08-CV00030-EJL, 2013 WL 4545805, at *4 (D. Idaho, Aug. 27, 2013) (granting leave to respond to new information

raised in a reply). While the Federal Rules of Civil Procedure do not expressly permit the

filing of a sur reply, this Court has recognized that a defendant's reply brief may justify a

sur reply in appropriate circumstances. *Mitchell v. Lead Hr, LLC*, 2:14-CV-00026-EJL,

2014 WL 5341891, at *3 (D. Idaho, Oct. 20, 2014).

Further analysis on this topic is unnecessary as (1) Anderson and Crowl

acknowledge that they brought up new issues in their reply brief and Ocampo is entitled

to respond; and (2) both sides have now had ample opportunities to actually respond—to

new and old material alike. The Motion to Strike is therefore GRANTED to the extent

that the Court will allow and consider all sur replies that have been filed. The Motion is

DENIED in that the Court will not strike Defendants' Motion for Summary Judgment.

Additionally, in light of Defendants' non-opposition, and good cause appearing,

the Court will also GRANT Ocampo's Motion for Extension of Time and will deem his

Statement of Facts as timely and appropriately filed. The Court now turns to the merits of

Anderson and Crowl's Motion for Summary Judgment.

In their original Motion, Anderson and Crowl alleged that Ocampo failed to

exhaust his administrative remedies—a pre-condition to any lawsuit—because he did not

timely file a grievance with IDOC in accordance with their standard operating

procedures. Because of this failure, Anderson and Crowl assert Ocampo's claims are

barred. The "exhaustion requirement" is a frequently litigated component of prisoner

cases. The Court has dealt with it extensively. As it recently noted:

> Under the Prison Litigation Reform Act, "[n]o action shall be brought with
> respect to prison conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." *Woodford v. Ngo*, 548 U.S. 81, 87-88 (2006) (emphasis original) (quoting 42 U.S.C. § 1997e(a) (2000 ed.)). "The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Woodford*, 548 U.S. at 88-89 (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). Exhaustion requires both following the proper steps set forward by the administrative agency and doing so properly. *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

*Bautista-Aguayo v. Lee*, No. 3:17-CV-00053-DCN, 2019 WL 591430, at *2 (D. Idaho Feb. 13, 2019). The law is clear: exhaustion is a pre-requisite to the filing of any civil lawsuit by a prisoner related to the terms or conditions of his or her imprisonment.

Ocampo does not dispute this.

In his response, however, Ocampo points out that he was not incarcerated at the time he filed his Complaint and accordingly, the exhaustion requirements do not apply. Ocampo is correct in this assertion. The Ninth Circuit has clearly held that the language of 42 U.S.C. § 1997e(a) "is plain and unambiguous—the exhaustion requirement applies *only to prisoners*. A 'prisoner' is defined as 'any person incarcerated or detained in any facility. . . .'" *Talamantes v. Leyva*, 575 F.3d 1021, 1023 (9thCir. 2009) (quoting 42 U.S.C. § 1997e(h)(emphasis added). Ocampo was released from IDOC custody on December 13, 2016. At that point he ceased being "a prisoner." Thus, when Ocampo filed the instant lawsuit on January 30, 2018, he was not required to have exhausted his administrative remedies.

Anderson and Crowl do not dispute this.

Recognizing the applicable precedent—and "not [finding] any controlling law to rebut Plaintiff's argument on the issue" (Dkt. 45, at 2)—Anderson and Crowl withdrew their exhaustion arguments as to Ocampo's federal claims. *Id.* At that point, however, Anderson and Crowl introduced a new argument—that while Ocampo may be exempt from the exhaustion requirements on his federal claims under *Talamantes*, he was still required to follow the IDOC grievance process for his state law claims. This new argument was the subject of the Motion to Strike and the numerous sur replies. As the Court has already noted, however, even though Anderson and Crowl raised this issue in a reply brief, all parties have had an adequate opportunity to address it and the matter is ripe for adjudication.

Anderson and Crowl readily acknowledge that whether a former prisoner is required to exhaust his administrative remedies has not been adjudicated in Idaho state courts. Nonetheless, they ask this court to predict how the state's highest court would resolve the issue. *See Strong v. Unumprovident Corp.,* 393 F. Supp. 2d 1012, 1018 (D. Idaho 2005) (citing *Air–Sea Forwarders, Inc. v. Air Asia Co.,* 880 F.2d 176, 186 (9th Cir.1989) ("[W]here the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it."). While it is the Court's duty to predict how the Idaho Supreme Court would rule on the issue of whether former prisoners are required to comply with state exhaustion requirements, the Court finds that there is insufficient evidence to accept Anderson and Crowl's proposed interpretation that Ocampo (or any former prisoner) should be included in the same category as prisoners (or people actually incarcerated).

Idaho Code explains, in pertinent part, that:

> Unless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no petition for writ of habeas corpus or any other civil action shall be brought by any person confined in a state or county institution, or in a state, local or private correctional facility, with respect to conditions of confinement until all available administrative remedies have been exhausted.

Idaho Code § 19-4206. Anderson and Crowl argue that while this statute and its federal counterpart are similar, the results differ because the actual definition of "prisoner" differs between the two. Under the federal Prisoner Litigation Reform Act ("PLRA"), a "prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). As noted in the Ninth Circuit's decision in *Talamantes*, this definition *does not* include former prisoners.

Under Idaho's Institutional Litigation Procedures Act ("ILPA"), however, the definition is slightly different. In the ILPA, a "prisoner" is defined as ". . . an in-state or out-of-state prisoner, unless otherwise specifically provided or unless the context clearly indicates otherwise." Idaho Code § 19-4201A(6). Relying on the words "unless the context clearly indicates otherwise," Anderson and Crowl vaguely assert that "this difference is crucial as the context in this case does indicate the definition should include former prisoners." Dkt. 53, at 6. It is not entirely clear what Anderson and Crowl mean by this, but presumably they are implying that "the context" is former prisoners and their proposition is that the definition of "prisoners" should include them.

First, before even getting to the strict definition of a prisoner, the Court would point out that Idaho Code section 19-4206 specifically states that a lawsuit shall not be brought (absent exhaustion) ". . . by any person confined in a state or county institution . . . ." The phrase "[a]ny person confined" appears clear on its face. Unless a person is incarcerated (or confined), that person need not follow the mandatory procedures set forth in the statute. This language brings Idaho law directly in line with federal law on this issue.

Second, Anderson and Crowl's suggestion that the Court should include former prisoners within the definition of "prisoners" is difficult to accept. On its face, the proposition seems illogical at best. A non-prisoner (even a former prisoner) is not a prisoner, period. The Court does not mean to be flippant, but such a definition stretches the imagination of how far this concept could go. Under Anderson and Crowl's definition, anyone who had been a prisoner at some point in their lives would be foreclosed indefinitely from filing lawsuits based upon treatment while incarcerated—statute of limitations and other legal barriers notwithstanding—unless they had filed a grievance form while incarcerated.[4]

---

[4] For example, under this definition, if a prisoner was aggrieved or injured, but was (for whatever reason) released within the following 30 - 68 days after the injury occurred (the Court uses this timeframe because a grievance form must be filed within 30 days of the event in question, staff must respond within 10 days, the petitioner then has 14 days to file an appeal and the appellate authority then has 14 days to address the appeal), that former prisoner would be barred from filing suit as he did not complete the exhaustion process *while incarcerated*. But how could such a Plaintiff comply if he is no longer incarcerated? Surely, Anderson and Crowl would not expect a Plaintiff to voluntarily travel back to the prison and submit grievance forms.

As another example, under Anderson and Crowl's definition, a prisoner who legitimately did not realize they had a cause of action while in prison, but after being released determined they had been mistreated (while in prison) would be foreclosed from filing a lawsuit regarding their treatment if they did not take

Classifying someone who is not physically incarcerated as a prisoner could have other legal and detrimental effects under other statutes relative to rights, rehabilitation, travel, etc. Now, Anderson and Crowl presumably do not mean for this definition to extend outside of the current dispute regarding exhaustion, but the logical analysis is that a prisoner is someone who is, in fact, "in prison."

Turning to a more legal examination of the definition, the exception Anderson and Crowl rely on—that a person may be a prisoner if the "context clearly indicates otherwise"—is unclear. The Court does not know if this is an opt-out definition or an opt-in definition. In other words, it is not clear whether the language was intended to mean that all "in-state and out-of-state prisoners," are prisoners but some might not be if the "context clearly indicates otherwise," or, all "in-state and out-of-state prisoners" are prisoners and others *may be as well* if the "context clearly indicates otherwise." Alternatively, it could mean both.

Regardless of one's selective interpretation, the qualification is whether the "context clearly indicates otherwise." Here, this language of the statute is unclear, the application is unclear, and Anderson and Crowl's purported definition is unclear. The Court cannot in good faith take the position that the Idaho Supreme Court would interpret this statute to include former prisoners within the definition of prisoner. While that is one potential outcome, the Court believes that the more likely outcome would be the Idaho

---

part in the administrative process. Again, how could they reasonably be expected to complete this process if they did not determine—or even know—that they had a cause of action until after their release from prison?

Supreme Court finding that the Idaho statues and definitions more closely align with their federal counterparts and that former prisoners are not held to the same exhaustion standards as current prisoners. The alternative would simply create too many procedural problems—such as those the Court outlined in footnote 4.

To be sure, as Anderson and Crowl point out, it would not be fair or equitable (and even may thwart the policy considerations behind the exhaustion doctrine) to allow an incarcerated plaintiff to disregard or disobey prison requirements or Idaho statutes by simply waiting until his release to file a lawsuit. Along a similar vein, though, it would likewise not be fair or equitable to foreclose legitimate legal action of a former prisoner (regarding prison conditions) simply because he was released from prison.[5]

The Court shares Anderson and Crowl's concern and does not intend for this decision to be used as justification, an exception, or a run-around, of the exhaustion requirements. Those requirements are in full force and affect for any person who files a lawsuit while incarcerated. However, the fact remains that under federal PLRA, and a plain reading of Idaho's ILPA, a former prisoner is not the same as a currently incarcerated prisoner and is therefore not subject to the same exhaustion requirements.

Finally, Anderson and Crowl claim that Ocampo's whole position is disingenuous as he actually did begin grieving this situation while incarcerated but never did so

---

[5] This discussion could delve into other areas of law and the interplay between state rules and statutes, federal rules and statutes, prison rules and policies, conditions precedent to filing lawsuits, statute of limitations, etc. The bottom line, however, is that all citizens—including prisoners—are entitled to the benefits and protections of the law. So, while there may be statutory requirements that foreclose a post-incarceration lawsuit (such as the statute of limitations) the failure of a former inmate to exhaust remedies before his release should not act as a bar to a lawsuit filed after his release.

officially—or what he did grieve officially was unrelated to the current suit. Additionally, Anderson and Crowl claim that they took no part in this whole situation and are improper defendants in the first instance.

First, whether, and to what extent, Ocampo did or did not grieve this exact situation while incarcerated is irrelevant considering the Court's holding that—under the facts of this case—he did not have to exhaust those remedies as a pre-requisite to filing a civil lawsuit as a civilian.

Second, while Crowl's role in all of this does appear to be somewhat minor, Anderson was right in the middle of it all—or at least the aftermath—even heading up an investigation into the care Ocampo received. Ultimately whether Anderson and Crowl were major players or not, and whether their behavior or actions rise to the level of liability remains to be determined, but even outside the Court's ruling that administrative exhaustion does not apply to Ocampo as a former prisoner, there are clearly disputed facts surrounding Anderson and Crowl's involvement. Accordingly, they will remain as Defendants in this lawsuit.

In sum, the Court finds Anderson and Crowl's arguments unpersuasive. The fact that Ocampo was not incarcerated when he filed this suit is not "an insignificant technicality" (Dkt. 45, at 5) as Anderson and Crowl suggest, but a critical distinction. In accordance with *Talamantes*, Ocampo was not required under the PLRA to comply with the exhaustion requirements as to his federal claims. Additionally, because Ocampo was not "any person confined" at the time he filed this suit, he was not required under Idaho Code section 19-4206 to comply with exhaustion requirements as to his state claims.

Interrelatedly, the court does not find that Ocampo—as a "former prisoner"—under any "context" or interpretation of the statute "clearly" meets the definition of a prisoner under Idaho Code section 19-4201. Accordingly, Anderson and Crowl's Motion for Summary Judgment is DENIED.

**B. Anderson and Crowl's Motion to Amend/Correct Scheduling Order (Dkt. 55) and Amend/Correct Answer (Dkt. 56)**

**i. Legal Standard**

Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "leave to amend is not to be granted automatically," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990), and is within the sound discretion of the district court. *DCD Program v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "'Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint.'" *Desertain v. City of Los Angles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (quoting *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004)).

Additionally, when a party files a motion to amend after the Court's case management deadline to amend has passed, district courts in the Ninth Circuit apply Federal Rule of Civil Procedure 16(b), followed by a Rule15(a) analysis. *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 607-08 (9th Cir. 1992). Under Rule 16(b), the

movant must demonstrate good cause to amend. *Id.* at 609. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id*. at 609. The "court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id*. (quoting Rule 16 advisory committee's notes (1983 amendment)).

### ii. Analysis

As a threshold matter, the Court must address Anderson and Crowl's Motion to Amend/Correct Scheduling Order as it bears upon their Motion to Amend/Correct Answer. If the Court amends the deadlines, then it must evaluate Anderson and Crowl's Motion under Federal Rule of Civil Procedure 15 as the Motion will have been filed within the Court's new scheduling order. If, on the other hand, the Court does not amend the deadline, it will have to evaluate Anderson and Crowl's Motion under the higher standards of Rule 16 as the Motion will have been filed after the Court's case management deadline to amend has passed.

Ocampo filed his Complaint on January 30, 2018. Dkt. 1. Defendants Anderson and Crowl filed an Answer on March 5, 2018. Dkt. 9. On April 4, 2018, Ocampo agreed to Defendants' Stipulation for an Order to Amend Answer to his Complaint which amended and added a Fifteenth Affirmative Defense. Dkts. 13, 14. The same day, Defendants filed the Amended Answer. Dkt. 15.

On April 4, 2018, the parties also filed a stipulated Litigation Plan which set the deadline of July 5, 2018, for joinder of parties and amendment of pleadings. Dkt. 17.

On April 30, 2018, Ocampo moved to file an Amended Complaint to add claims against certain defendants who were formerly unknown. Dkt. 27. On May 21, 2018, the Court granted the Motion. Dkt. 32. On June 29, 2018, Defendants Anderson and Crowl filed an Answer to Ocampo's Amended Complaint. Dkt. 37. On July 5, 2018, the deadline for amendment of pleadings and joinder of parties expired. Dkt. 25; Dkt. 35.

On July 6, 2018, and August 16, 2018, Counsel for the new Defendants—those added via Ocampo's Amended Complaint—accepted service and appeared in the case. Dkt. 38; Dkt. 47. On August 16, 2018, all parties agreed to a Stipulation to Extend Deadlines. Dkt. 48. The purported reason for the stipulation was that the existing deadlines "do not provide Mr. Dunning and his counsel adequate time to fully and fairly defend against the allegations made in Plaintiff's Amended Complaint." Dkt. 48, at 2.

On August 21, 2018, this Court issued an Order Granting the Stipulation to Extend Deadlines. Dkt. 49. On October 17, 2018, Defendants filed the instant Motion requesting that the Court "correct" the joinder of parties and amendment of pleading deadline in the Case Management Order to align with the already extended deadlines. Dkt. 55.

In their motion—which all other defendants join in support—Anderson and Crowl argue that the omission of the deadline for joinder of parties or amendment of pleadings was an unintentional oversight. Ocampo vehemently disagrees and contends that this is simply a ploy by Anderson and Crowl to file their Amended Answer—which seeks to add two new affirmative defenses. Ocampo asserts that the agreement between the parties

was to extend only the *un-expired* deadlines. The parties have extensively briefed whether this was an inadvertent error or purposeful omission, but whether it was intentional or not is ultimately irrelevant.

If the parties intended to include this deadline—despite Ocampo's position to the contrary—and its omission was simply an oversight, the matter is easily resolved and the error corrected. However, even assuming that the parties *did not* intend to extend this deadline (as it had already passed), to have done so would have been in error. Because certain defendants had not even appeared in the suit yet, intentionally not including that deadline would have impermissibly foreclosed that procedural right as to those parties. Logically, the deadline should have been moved. Now to be sure, the party who took advantage of this changed deadline (Anderson and Crowl) was not the party that *needed* the deadline moved (the newly added defendants), but this is of little consequence to the Court. Absent extenuating circumstances not present here, the Court rarely sets alternating (or party specific deadlines) in a case. Said differently, while the impetus for a deadline may have been new defendants coming into the case, that does not mean that other defendants could not take advantage of the new deadlines. As Anderson and Crowl point out, once Ocampo moved to have other parties added to the suit, the case was effectively (although not officially) stayed pending their appearance. At that time, this case was in its infancy, discovery had only just begun, and some fine tuning—such as Ocampo joining parties, Defendants amending pleadings—is par for the course in complex litigation.

All things considered, the Court finds that it is appropriate to extend the deadline for joinder or parties and amendment of pleadings in tandem with the other deadlines previously extended. Accordingly, the new deadline would have been November 5, 2018.

Finally, even assuming, *arguendo*, that this deadline did not need to be moved, or that it only applied to the newly added defendants, there is still a remedy for Anderson and Crowl under Rule 16. In other words, regardless of whether the deadline was extended, Defendants still would have been within their right to file a motion to amend—it just would have been evaluated under a higher standard.

As a result of the Court's determination that the deadline should have been extended to November 5, 2018, Anderson and Crowl's October 17, 2018, filing will be evaluated under Federal Rule of Civil Procedure 15 standards.

Generally, a court will grant a motion to amend unless the opposing party can substantially show one of the four *Foman* factors: (1) prejudice to the opposing party; (2) bad faith; (3) undue delay in the litigation; or (4) futility. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that it is the consideration of prejudice to the opposing party that carries the greatest weight and absent prejudice, "there exists a *presumption* under Rule 15(a) in favor of granting leave to amend" unless a strong showing is made on one of the other factors. *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (emphasis in original).

In this case, Ocampo has only argued that the first of the *Foman* factors is at issue. Ocampo contends that Defendants should not be allowed to amend their answer under Fed. Civ. P. 15(a) because he would be severely prejudiced by their affirmative

defense of a failure to post a bond pursuant to Idaho Code section 6-610. Ocampo does not take issue with any of the other amendments.

Ocampo asserts that he should not have to "suffer the consequences" of allowing Defendants to amend their Answer to assert this affirmative defense and states that "he could have sought relief from the Court for failing to file a bond but did not do so because Defendants did not assert Idaho Code § [6-610] as an affirmative defense . . .." *Id*. Interestingly, the same day Ocampo said this, he did just that—sought relief from the bond requirements of Idaho Code section 6-610. Thus, even though the Court had not officially ruled on whether Anderson and Crowl could amend their answer to assert this specific defense, Ocampo filed a Motion to Waive or Set Bond—appearing to acknowledge that it was in fact a requirement preceding this suit.

Now, as will be discussed in the following section, a late posting of the bond (or even wavier) is allowed under this District's precedent. In light of the Court's forthcoming determination that Ocampo can (even at this stage) post a bond, there is no reason to further analyze his prejudicial claims. Determining this Motion based on the after-filed Motion for Bond is something akin to putting the cart before the horse, but the fact is that even allowing amendment at this point will not prejudice Ocampo because he has been allowed a full opportunity to defend himself against this defense—successfully in fact—thus any prejudice no longer exists.

In this case, the Court finds that under Rule 15's liberal standards, Anderson and Crowl should be allowed to amend their answer. This case was not even a year old when the request was made, numerous parties had been added, deadlines had been moved,

discovery had only just begun, and the issues were crystalizing. Now, with all Defendants named, all parties represented, all appearances, answers, and other procedural mechanisms in place, the case can smoothly move forward.[6] The Court does not find any bad faith on Anderson and Crowl's part, nor does it find that the amendments are futile or would result in any undue delay. The only potentially prejudicial aspect of the amendments—the addition of the bond defense—will be dealt with below and will not negatively impact Ocampo. Anderson and Crowl's Motion to Amend Answer is, therefore, GRANTED. For clarity in the record, Anderson and Crowl shall file a clean copy of their Amended Answer (Dkt. 56, exhibit 1) within 7 days of the date of this order.

### C. Ocampo's Motion to Waive (or Set) Bond (Dkt. 60)

In response to Anderson and Crowl's Amended Answer that raises the Affirmative Defense that Ocampo failed to comply with Idaho Code section 6-610 and post a bond, Ocampo filed the instant motion petitioning the Court to either (1) waive the bond, or (2) set the bond at a low amount—namely, no more than $50.00. Because Idaho Code section 6-610 only applies to law enforcement officers, the remaining defendants take no position on Ocampo's Motion (as none of them are law enforcement officers). Thus, this requirement only applies to Ocampo's state law claims and only as to Defendants Anderson and Crowl.

---

[6] Recognizing that it has taken the Court some time to address these motions—and with discovery deadlines fast approaching—*it may*, once again, be appropriate to extend certain deadlines so that all parties have a fair opportunity to engage in full and complete discovery on all claims and defenses now in this suit. The Court will not extend any deadlines *sua sponte*, but would entertain such a motion.

### i. Legal Standard

In Idaho, a plaintiff is required, as a condition precedent to filing a lawsuit against any law enforcement officer when the action arises out of the performance of his duty, to prepare and file a bond at the time of the filing of the complaint. Idaho Code § 6-610. The law provides that a defendant may object to the plaintiff's failure to file a bond "[a]t any time during the course of [the] civil action." *Ayala v. United States*, No. CV 09–14–S–BLW, 2010 WL 299153, at *1 (D. Idaho Jan. 19, 2010); *See also Stone v. Nielsen*, No.: 4:16-cv-00095-REB, 2018 WL 1512592, at *4 (D. Idaho Mar. 27, 2018) ("Although not a jurisdictional requirement, posting bond is 'mandatory' and a failure to post bond requires the trial court judge to dismiss the claims immediately."). If Defendants raise plaintiff's failure to file a bond, the judge shall dismiss the case. *See* Idaho Code § 6-610(4), (5).

The one exception to posting a bond prior to filing suit, is if a plaintiff is indigent under Idaho Code section 31-3220. In that event, a court may waive costs, fees, and security if (1) the party requesting a waiver files an affidavit stating that he is indigent and unable to pay the costs, fees, and security associated with his case, and (2) the court finds, after informal inquiry, that the party is indigent for the purpose of prepayment of fees, costs, or security. *See Stone*, 2018 WL 1512592, at *4.

### ii. Analysis

Ocampo does not dispute that Idaho Code section 6-610 applies to his state law claims against Anderson and Crowl. However, he does argue that Defendants failed to assert a timely and appropriate objection as an affirmative defense within any of their

previous answers and thus waived the right to object—and in turn, essentially waived the bond requirement itself.

At the outset, the Court rejects Ocampo's argument. Under the plain language of the statute, as well as existing caselaw in this District, a Defendant can raise the issue of a Plaintiff's failure to post the requisite bond "at any time" during the litigation. Idaho Code § 6-610(4); *Ayala*, 2010 WL 299153, at *1. Thus, Anderson and Crowl's defense is timely.

However, the question of whether a bond can be waived or filed after-the-fact has also been carefully scrutinized in this District. While on its face, it seems implausible that a "condition precedent" could be completed after-the-fact, there is support for such a proposition. Recently, in *Kucirek for Estate & Heirs of Grossklaus v. Jared*, United States Magistrate Judge Candy W. Dale artfully and thoroughly addressed this very question. Although lengthy, the Court will include Judge Dale's full history and analysis on this topic, as it is the most current and exhaustive explanation of this District's position on the bond requirements of Idaho Code section 6-610.

> The question of waiver is not clear cut. It first was addressed by the Idaho Supreme Court in 1973. *Garren v. Butigan*, 509 P.2d 340, 341 (Idaho 1973). In *Garren*, the state defendants filed an answer prior to asserting the lack of bond in a later filed motion to dismiss. *Id.* at 341. The court concluded "lack of a bond is a matter of avoidance or affirmative defense" that is waived if not made "before pleading if a further pleading is permitted." *Id.* at 433, citing Idaho R. Civ. P. 12(b) (Section 6-610's bond requirement was interpreted to be a waivable affirmative defense).
>
> The question of waiver by defendants has also been addressed by this Court. Generally, the Court has interpreted Section 6-610 to permit defendants to raise the issue of failure to post bond at any point during the suit. *Ayala v. United States*, No. CV 09-14-S-BLW, 2010 WL 299153 (D. Idaho Jan. 19,

2010). In *Ayala*, the plaintiff did not comply with the bond requirement and argued defendants waived the requirement by failing to raise the defense in their answer to the complaint. *Id.* at *1. Although the procedural facts in *Ayala* matched those in *Garren*, the Court found in opposite of the Idaho Supreme Court, holding the law expressly provides that "a defendant may object to the plaintiff's failure to file a bond '[a]t any time during the course of [the] civil action." The Court found it had no choice but to dismiss the state law claims as to the defendant law enforcement officers. *Id.*; *See* Idaho Code § 6-610(4-5).

The following year, in 2011, the Court again addressed the issue of waiver by defendants. *Pauls v. Green*, 816 F. Supp. 2d 961 (D. Idaho 2011). The plaintiff in *Pauls* failed to post the required bond. Defendants argued, in a motion filed after their answer, the Court was required to dismiss the state law claims. *Id.* at 974. In turn, the plaintiff asserted the defendants were estopped from raising the issue—citing *Garren. Id.* Unlike the *Garren* defendants, however, the *Pauls* defendants did raise the bond requirement as an affirmative defense in their answer. *Id.; See* case no. 4:08-CV-00337-BLW (Dkt. 14 at 6.) Thus, the Court readily distinguished the cases and held the *Pauls* defendants had not waived the defense. *Id.* at 974-975.

Although it is the Court's usual practice to permit defendants to raise the issue of at any point during the suit, there is a well-established exception to the application of the before-filed bond requirement—the case of an indigent plaintiff. Idaho law expressly allows for plaintiffs who cannot afford to post bond to request a waiver of the requirement from a court through the provisions of Idaho Code § 31-3220. *See Beehler v. Fremont Cty.*, 182 P.3d 713, 717 (Idaho Ct. App. 2008).

Beyond the indigence waiver, the Court has granted leeway to plaintiffs who fail to meet the requirement if they provide a reason for the failure. *Bales v. ADA Cty.*, 2016 WL 1275595, at *1 (D. Idaho Mar. 31, 2016). For instance, in *Bales*, the plaintiff asserted she was unable to find a bonding company who would write a bond for purposes outlined in the statute. *Id.* The Court, although skeptical of the purported reason, nevertheless allowed the plaintiff 30 days to secure bonding and to supplement the record. *Id.* In another matter, the plaintiffs attempted to secure a bond but were rejected by four surety companies. *Cameron v. Owyhee Cty.*, WL 2594953, at *3 (D. Idaho June 22, 2010).

No. 3:17-CV-00028-CWD, 2018 WL 4224847, at *9–10 (D. Idaho Sept. 5, 2018).

The instant case is distinguishable from those outlined by Judge Dale because although Anderson and Crowl raised this defense in their Answer—as opposed to some other pleading filed after their answer—it was their fourth answer. *See* Dkt. 9, Dkt. 15, Dkt. 37, Dkt. 56. Again, under this District's precedent (although at odds with the Idaho Supreme Court in *Garren*) the failure to post a bond defense can be raised "at any time." Nonetheless, an important factor in the cases cited above was when, and how, the defense was actually raised. Importantly, as Ocampo notes, if Defendants had raised this issue in a more timely manner, he could have remedied that deficiency—even via dismissal of his current suit and refiling—however, as it stands, the statute of limitations deadlines on these claims have run and dismissing the suit now would forever bar these claims. Again, while this defense does not necessarily have to be "timely" raised, that concept should never be used as a sword by waiting until any applicable statute of limitations has run before bringing it up.[7]

Further distinguishing this case is the fact that the exceptions cited by Judge Dale were for parties who were either indigent or had shown some excusable reason for their failure to comply. Here, Ocampo has not been granted any form of indigency thus far in the case, nor does he provide any particular reasons for his failure to timely comply.

As part of the instant motion, Ocampo filed an affidavit stating that he makes approximately $2,000 per month and that his monthly expenses are $1,999 per month.

---

[7] The Court is not implying Anderson and Crowl did that here, simply that such would run contrary to notions of equity and fair play.

Dkt. 60-1, at 1-2. This leads to the conclusion that Ocampo is most likely indigent (or unable to pay the costs and fees associated with litigation). However, as Anderson and Crowl point out, that argument is undercut by the fact that Ocampo never requested any sort of indigent—or in forma pauperis—status in this case, that he paid the $400 filing fee when he filed suit, and that he has an attorney. These facts, however, are themselves undercut by the fact that Ocampo's attorney works for Idaho Legal Aid (where attorneys *are not* paid directly by their clients).

Thus, based upon the available information in the record (namely that while represented by counsel, that representation is free to Ocampo and that financially he spends what he makes) the Court finds that Ocampo is indigent and cannot afford to pay a high bond. That said, the purpose of the bond is crucial, and the Court frequently requires plaintiffs (even prisoners and pro-se parties granted in forma paupers status) to pay *some* monetary amount in fees or bonds. The Court's purpose in doing so is to give weight to the policies and purposes behind any applicable statutes, but also to give plaintiffs fair and equal access to the Courts. Some fee or bond (even a nominal one) ensure the integrity of the system and helps plaintiffs feel more invested in the matter.

Recently, in *Chacon v. Powell*, this Court was presented with a request to set a bond under Idaho Code section 6-610. In that case, the Plaintiff was incarcerated, had little to no assets, and no income. Even under those circumstances, however, the Court

required a $250 bond.[8] In *Cf. Raymond v. Sloan*, No.1:13-CV-423-BLW, 2013 WL

6405020 (D. Idaho December 6, 2013), this Court considered Plaintiff's $4,800 per

month income and his $4,400 per month expenses and required that he post a $500.00

bond within twenty (20) days of the order. *Id.*

In this case, Ocampo is not incarcerated or as despondent as *Chacon*, however, he

does not have as high an income (or as much discretionary income) as *Raymond*.

Accordingly, the Court finds that a bond in the amount of $350 is fair, equitable, and

accurately reflects this Court's general practices. Ocampo shall tender payment within 21

days of receipt of this order.

In conclusion, the Court wishes to make clear that the requirements of Idaho

Code section 6-610 are in full force and effect and its decision today does not seek to

thwart those efforts. The Court also does not take an official position on the interplay

between *Garren* and *Ayala*, but only that *under the specific facts of this case,* the Court

will allow the late posting of a bond.[9] There have been numerous amendments, additions,

extensions, and other procedural opportunities afforded to both parties in this case that

have required coordination and concessions. Some of the confusion and delay is fairly

---

[8] As this order did not qualify as a written decision as defined by the Judicial Conference and under the E-Government Act it was not posted to Westlaw, however, it is on the record as Dkt. 4 in Case No. 4:19-cv-00100.

[9] This decision is based upon the interrelated findings that (1) although Defendants can raise the failure to post the bond at any time under *Ayala*—and Defendants technically do so in their answer—it was nonetheless their fourth answer; (2) it is not clear whether a fourth answer would qualify under *Garren's* standard that such must be raised "before further pleadings;" (3) Plaintiff appears indigent, although his affidavit is almost five months old and only partially complies with the requirements of Idaho Code section 31-3220; and (4) the policy concerns behind Idaho Code section 6-610 still warrant the posting of the bond.

attributable to both parties—and even to the Court's timing in reaching the motions at issue. With such uncertainty between the Idaho Supreme Court's interpretation of the bond requirements under Idaho Code section 6-610, and the Federal Court's interpretation (with exceptions) to the same requirements, it is left to the Court to determine—after reviewing the totality of the circumstances—the best way to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Here, the Court finds that the most equitable resolution is to allow Ocampo to post a nominal bond at this stage of the litigation.

Ocampo's Motion to Waive or Set Bond is GRANTED as outlined above.

## IV. ORDER

1. Anderson and Crowl's initial Motion for Summary Judgment (Dkt. 40) is DENIED.

2. Ocampo's Motion to Strike Defendants' Motion for Summary Judgment (Dkt. 51) is GRANTED in PART and DENIED in PART. The Court will not strike Anderson and Crowl's Motion but will allow the sur-replies to stand.

3. Ocampo's Motion for Extension of Time (Dkt. 52) is GRANTED.

4. Anderson and Crowl's Motion to Amend/Correct Scheduling Deadlines (Dkt. 55) is GRANTED. The deadline for joinder or parties and amendment of pleadings is extended four months to November 5, 2018.

5. Anderson and Crowl's Motion to Amend Answer (Dkt. 56) is GRANTED. Anderson and Crowl shall file their amended answer (Dkt. 56 Exhibit 1) within 7 days of the date of this decision.

6. Ocampo's Motion to Waiver or Set Bond (Dkt. 60) is GRANTED. Ocampo shall post of bond of $350 within 21 days of the date of this decision.

DATED: April 4, 2019

David C. Nye
Chief U.S. District Court Judge